# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PETER GAKUBA, ) | |
| ) | |
| Plaintiff, ) | 22-1103-SPM |
| ) | |
| vs. ) | Case No. 22-cv-668-NJR |
| ) | |
| CATHERINE WRIGHT, JOHN ) | |
| BARWICK, MATTHEW SWELLS, ) | |
| TERRY GRISSOM, JOHN DOE #1, ) | |
| JOHN BROOKHART, CAMILE ) | |
| LINDSAY, and ROBERT FANNING, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Peter Gakuba, a former inmate of the Illinois Department of Corrections ("IDOC"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. He filed a Complaint (Doc. 3) pursuant to Section 1983 as well as a motion to proceed *in forma pauperis* ("IFP") (Doc. 2). Because Gakuba was no longer incarcerated, his claims were not subject to review under 28 U.S.C. § 1915A but were still subject to review under 28 U.S.C. § 1915(a)(1) because he sought IFP status. The Court denied his request for IFP status and dismissed his Complaint (Doc. 3) for failure to state a claim. He was granted leave to amend his Complaint and, on April 19, 2022, filed his First Amended Complaint (Doc. 14). He also filed a motion for temporary restraining order and/or preliminary injunction (Doc. 15).

Under 28 U.S.C. § 1915(a)(1), a federal district court may allow a civil case to proceed without prepayment of fees, if the movant "submits an affidavit that includes a statement of

1

all assets [he] possesses [showing] that the person is unable to pay such fees or give security therefor." Gakuba has done so here. But the Court's inquiry does not end there, because 28 U.S.C. § 1915(e)(2) requires careful threshold scrutiny of the complaint filed by an IFP plaintiff (those filed by prisoners and non-prisoners alike).

A court can deny a qualified plaintiff leave to file IFP or can dismiss a case if the action is clearly frivolous or malicious, fails to state a claim, or is a claim for money damages against an immune defendant. 28 U.S.C. § 1915(e)(2)(B). The test for determining if an action is frivolous or without merit is whether the plaintiff can make a rational argument on the law or facts in support of the claim. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Corgain v. Miller*, 708 F.2d 1241, 1247 (7th Cir. 1983). An action fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When assessing a motion to proceed IFP, a district court should inquire into the merits of the plaintiff's claims, and if the court finds that the case lacks merit under the criteria listed in Section 1915(e)(2)(B), it should deny leave to proceed IFP. *Lucien v. Roegner*, 682 F.2d 625, 626 (7th Cir. 1982).

## THE AMENDED COMPLAINT

In his Amended Complaint, Gakuba makes the following allegations: On April 27, 2021, Gakuba paroled out of IDOC custody (Doc. 14, p. 8). Prior to his parole, he prepared 18 banker boxes full of legal documents for shipment. These boxes contained legal documents essential to his pending civil conditions of confinement claims and collateral attacks to his conviction. The boxes also included correspondence with his lawyers and settlement documents (*Id*. at p. 8). Gakuba alleges that the boxes contain approximately 7,000 pages of court transcripts and 7,000 pages of court records (*Id*. at p. 10). Later in the Amended

Complaint he alleges that the documents contain 6,000 pages of transcripts and 8,000 pages of court records (*Id*. at p. 30).

One of the documents in his box includes a transfer denial slip which Gakuba believes it relevant to another of his cases *Gakuba v. Rain*, Case No. 19-cv-437 (S.D. Ill.). Although Gakuba acknowledges that the case is on appeal (Defendants were granted summary judgment on exhaustion grounds on June 18, 2020 (Doc. 82)), Gakuba believes the document will be relevant to his claims in that case if the judgment is overturned on appeal and returns to this Court for merits discovery (Doc. 14, pp. 23-24). He alleges that other documents are necessary to support a "contemplated Rule 60(b)" motion, his present lawsuits, and a case that is currently stayed (*Id*. at p. 26). *See Gakuba v. Swells*, Case No. 20-cv-277-SMY and *Gakuba*, Case No. 12-cv-7296.

In September 2019, Gakuba transferred to Vienna Correctional Center. At that time, he packed 16 banker boxes of legal materials in copy paper boxes (*Id*. at pp. 18-19). He requested packing tape from John Doe #1 property manager who refused to give him tape (*Id*. at p. 19). Gakuba maintains that when he previously transferred, his documents were transferred in polymer locked boxes with zip ties, as opposed to cardboard copy paper boxes (*Id*. at p. 23). He alleges that John Doe #1 knew or should have known that transporting such documents, unsealed, would result in their loss or destruction (*Id*.).

When he arrived at Vienna, Catherine Wright summoned him to retrieve his personal property. She informed him that his banker boxes of legal materials were left by the side of the road in a trash heap (*Id*. at p. 19). Gakuba alleges that ¼ of the documents were damaged with boot prints and another ¼ were missing. Wright indicated she had never seen anything like this before and called Barwick, who Gakuba labels as warden #2, who took pictures with

his iPhone (*Id*. at p. 20). Barwick discussed the matter with Matthew Swells, who Gakuba labels warden #1, and Swells directed Barwick to send the pictures to the wardens at Robinson (*Id*.). Wright informed Gakuba that Jake Brookhart, warden #2 at Robinson, was contacted about the destruction. Gakuba filed emergency grievances on the matter which Swells deemed not an emergency (*Id*.). He maintains that he filed three to 10 grievances on the destroyed documents. He also spoke with Barwick and Wells on a number of occasions about the status of his grievances, but they were evasive and he never received responses (*Id*. at pp. 20-21). When Swells retired and Grissom took over as warden, Gakuba continued to inquire of Grissom about the status of his grievances but he, too, was evasive (*Id*. at p. 21).

Gakuba alleges that between September 2019 and April 27, 2021, he continued to inquire about his grievances with Swells, Barwick, and Grissom but they were evasive and refused to show Gakuba the photos of his destroyed property (*Id*. at pp. 21-22). Gakuba alleges that he was transferred to Vienna from Robinson in retaliation for suing the Robinson warden and the destruction of his legal documents was an additional act of retaliation (*Id*. at p. 24). He believes he was transferred in order to obtain access to his legal documents and destroy them (*Id*. at pp. 24-25). He believes this to be retaliation because he previously requested a transfer which was denied (*Id*.).

Upon his release on April 27, 2021, Gakuba left without his legal materials. He alleges that Wright, Barwick, Grissom, and Swells refused to discuss the matter with him, denied his emergency grievances related to the documents, and then offered to mail the documents if Gakuba paid the postage, which amounted to $1,200.00 (*Id*. at p. 27). Gakuba alleges that his personal lawyer offered to have his UPS account billed for the shipment, but his request was refused. Specifically, Gakuba's counsel called Camile Lindsey, former IDOC general counsel,

who stated that she would have to speak with her successor, Robert Fanning (*Id.*). She stated that something could be worked out between Gakuba and IDOC, but Gakuba alleges that IDOC was required to mail all of his legal materials in accordance with 20 Ill. Admin. Code § 525.130(a) (*Id.*). Lindsay also offered to have the documents shipped to Gakuba's brother in Chicago, Illinois (*Id.* at p. 28). Gakuba found the request unreasonable (*Id.*). Lindsay offered to transfer the documents to another Illinois prison for pick-up by Gakuba, which he also found unreasonable (*Id.*). Lindsay then handed the issue off to Robert Fanning. Gakuba spoke to another official in the general counsel's office and was told that they were working on the issue (*Id.*). Lindsay later emailed the attorney assisting Gakuba "washing her hands" of the issue (*Id.* at p. 30).

## DISCUSSION

Based on the allegations in the Amended Complaint, Gakuba sets forth the following Counts:

**Count 1:** First and/or Fourteenth Amendment access to courts claim against Wright, Barwick, Swells, Grissom, John Doe, Brookhart, Lindsay, and Fanning for destroying his legal documents in 2019 and denying him access to his legal boxes upon his release in April 2021.

**Count 2:** Title VI of the Civil Rights Act violation against Wright, Barwick, Swells, Grissom, John Doe, Brookhart, Lindsay, and Fanning for destroying his legal documents in 2019 and denying him access to his legal boxes upon his release in April 2021.

**Count 3:** Fourteenth Amendment abuse of process claim against Wright, Barwick, Swells, Grissom, John Doe, Brookhart, Lindsay, and Fanning for destroying his legal documents in 2019 and denying him access to his legal boxes upon his release in April 2021.

| | |
|---|---|
| **Count 4:** | **First Amendment retaliation claim against Wright, Barwick, Swells, Grissom, John Doe, Brookhart, Lindsay, and Fanning for destroying his legal documents in 2019 and denying him access to his legal boxes upon his release in April 2021.** |
| **Count 5:** | **Illinois State Law Conspiracy claim against all Defendants.** |
| **Count 6:** | **Illinois State Law Illegal Tort Conversion claim against all Defendants.** |
| **Count 7:** | **Illinois State Law Gross Negligence claim against all Defendants.** |
| **Count 8:** | **Fourteenth Amendment spoilation claim against all Defendants for losing and/or destroying Barwick's iPhone photos of the 2019 legal documents.** |
| **Count 9:** | **Illinois State Law Intentional Infliction of Emotional Distress claim against all Defendants.** |
| **Count 10:** | **Section 1983 supervisor liability claim against Swells, Barwick, Grissom, Brookhart, Lindsay, and Fanning for facilitating, approving, or condoning a pattern and practice of misconduct.** |
| **Count 11:** | **Illinois state law indemnification claim against all Defendants pursuant to 745 ILCS 10/9-102.** |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**SEVERANCE**

Once again, Gakuba tries to tie his 2019 claims regarding the destruction of his property with his current claims regarding his legal boxes by alleging a vast conspiracy between the parties. At a minimum, to present a claim for a conspiracy, a plaintiff must "demonstrate that the conspirators have an agreement to inflict injury or harm upon him." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 304-05 (7th Cir. 2011). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 305 (citation omitted). Other than stating that Defendants acted "in conspiracy" and "in further conspiracy" he fails to allege any facts that would suggest a meeting of the minds among the various Defendants. Gakuba alleges that he filed numerous grievances against various prisoner staffers and that these events don't happen in isolation or at random (Doc. 15, pp. 25-26). But he offers nothing but his own belief that Defendants acted in conspiracy with each other. The events occurred some two years apart and he has offered no allegations to suggest a meeting of the minds.

Without the conspiracy claim tying the allegations together, Gakuba presents two distinct incidents regarding his legal boxes: one which occurred in 2019 and one in 2021. Although Gakuba does identify Wright, Barwick, and Swells as witnesses to the destroyed legal boxes in 2019, the allegations in his Amended Complaint do not suggest that they participated in the destruction. He alleges that they were evasive about grievances he filed, which he believes makes them part of a conspiracy of a "blue wall of silence" (Doc. 14, p. 22). But to the extent he alleges that Swells and Grissom failed to respond to grievances regarding

7

the 2019 destruction of his legal materials, Defendants cannot be liable simply for denying or failing to respond to grievances. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) ("[T]he alleged mishandling of [a prisoner's] grievance by persons who otherwise did not cause or participate in the underlying conduct states no claim."); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007).

Thus, the claims regarding his 2019 legal boxes are unrelated to his current claims regarding his legal boxes being held at Vienna after his release. Although the Court initially deemed that the claims regarding his 2019 legal materials were barred by the statute of limitations, Gakuba maintains that he was still in the process of exhausting his claims and, thus, the claims were not barred.[2] Based on this new allegation, the Court will sever the claims regarding the 2019 destruction of his legal documents for review in a new case. The Clerk of Court is **ORDERED** to open a new case against John Doe #1 and Brookhart.

### PRELIMINARY DISMISSALS

As to the claims remaining in this case, Counts 1-7, 9-11 related to the refusal to mail his legal boxes in 2021,[3] Gakuba also attempts to bring claims against two IDOC attorneys, Camile Lindsay and Robert Fanning. He alleges they "failed to play it straight" with him

---

[2] Gakuba maintains that this Court dismissed nearly identical property destruction claims in *Gakuba v. Wright*, Case No. 19-cv-1274 on the basis that he failed to exhaust his administrative remedies. But that case focused on access to the courts claims against Karen Pannier for limiting Gakuba's access to the law library and legal materials. *See* Case No. 19-cv-1274 (Doc. 86, p. 2). Those claims were dismissed on the basis that Gakuba failed to exhaust his administrative remedies. Gakuba did previously raise an issue regarding the destruction of his legal materials during his transfer to Vienna. *See Gakuba v. Wampler*, Case No. 19-cv-1272-SMY. But Gakuba chose not to pursue that case and it was voluntarily dismissed on January 29, 2020.

[3] Count 8 is only related to the destruction of an iPhone relevant to Gakuba's legal documents in 2019 and is unrelated to the 18 banking boxes which were not mailed to Gakuba upon his release.

about whether his documents would be mailed to him. Other than re-laying information from their clients, there is no indication that the attorneys themselves violated Gakuba's rights. Thus, Lindsay and Fanning are also **DISMISSED without prejudice**.

Further, Gakuba maintains that Swells retired in 2020 (Doc. 14, p. 21) well before Gakuba packed his boxes for his 2021 release. There is no indication that Swells participated in the refusal to mail his legal documents. Accordingly, all claims against Swells are **DISMISSED without prejudice**.

Gakuba also purports to bring state law claims for conspiracy (Count 5), illegal tort conversion (Count 6), gross negligence (Count 7), intentional infliction of emotional distress (Count 9), and indemnification (Count 11), but offers only conclusory statements which do not state a claim. Thus, the state law claims are also **DISMISSED without prejudice**.

### REMAINING CLAIMS

#### Count 1

The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the prisoner must show that prison officials interfered with his legal materials. *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (citing *Lewis v. Casey*, 518 U.S. 343, 348 (1996)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994). To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation

omitted); *accord Guajardo-Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Gakuba to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Gakuba maintains that he has ongoing state and federal suits which he will need his 18 legal boxes to pursue. He indicates that the documents are for collateral attacks to his conviction and to his conditions of confinement and cites to three cases: *Gakuba v . Swells*, Case No. 20-cv-277-SMY; *Gakuba*, Case No. 12-cv- 7296, and *In re: Gakuba*, Case No. 21-2833 (USCA 3rd Circuit). At this stage, the Court finds that the allegations in Count 1 are sufficient to proceed.

**Count 2**

Gakuba again fails to state a Title VI violation. As to Gakuba's Title VI claim, Title VI of the Civil Rights Act prohibits discrimination on the basis of race by a recipient of federal funds:

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

42 U.S.C. § 2000d.

To prevail on this claim, Gakuba must plead intentional discrimination. *See Guardians Ass'n v. Civil Serv. Comm'n of New York City*, 463 U.S. 582, 593 (1983). As with his original Complaint, Gakuba merely states that he is black and Defendants are white. This is simply not enough to state a Title VI claim. He does not allege that other inmates of a different race were treated differently or that Defendants made any comments of a racial nature that would suggest that they were discriminating against him based on his race. *See Khan v. Midwestern*

*University*, 147 F. Supp. 3d 718, 721 (N.D. Ill. 2015) ("Title VI prohibits only intentional discrimination") (collecting cases). Count 2 is **DISMISSED without prejudice**.

### Count 3

Count 3 purports to bring a Fourteenth Amendment claim, which Gakuba labels a malicious abuse of process (Doc. 14, p. 36). But the tort of abuse of process is a state law claim which requires "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Kumar v. Bornstein*, 820 N.E.2d 1167, 1173 (Ill. App. Ct. 2004). To the extent that Gakuba alleges that Defendants violated 20 Ill. Admin. Code § 525.130(a) by failing to send his legal boxes to his Baltimore address after his release, the violation of a state law does not amount to a constitutional violation. *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001); *Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (2010) ("violation of state law is not a ground for a federal civil rights suit"); *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir.2003) ("[Section] 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices"). Thus, his claim under the Fourteenth Amendment is **DISMISSED without prejudice**.

### Count 4

At this stage, Gakuba state a viable retaliation claim against Defendants Wright, Barwick, and Grissom. He alleges that Defendants refused to send his legal boxes due to the numerous cases he has filed against them.

### Count 10

Finally, in Count 10, Gakuba purports to raise a claim for supervisory liability pursuant to 42 U.S.C. § 1983. But *respondeat superior*, or supervisor, liability is not recognized

under Section 1983. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782 (7th Cir. 2014) (*citing Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982)). A supervisory official can be held liable, however, if he knew about the conduct and facilitated, approved, condoned, or turned a blind eye to it. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Here, Gakuba alleges that the supervisor officials, Barwick and Grissom, knew about the withholding of the documents, it occurred with their knowledge, and they approved, facilitated, and condoned the action.[4] Accordingly, the Court will allow Count 10 to proceed against Barwick and Grissom at this time. The Court notes that Gakuba already alleges that these individuals personally violated his rights. This claim appears to be an alternative to the claims against these Defendants in the other counts.

### MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

As to Gakuba's motion for temporary restraining order, preliminary and permanent injunction, and declaratory judgment (Doc. 15), he seeks an order stopping the destruction of his legal boxes. Although he states that the boxes would be destroyed on April 27, 2022, according to discussions with Catherine Wright, the Court finds no evidence in the record of a deadline for the destruction of the documents. Gakuba maintains that on April 27, 2022, if not sooner, the documents will be destroyed and that the "facts are no disputed as the litigation history of the state action seeking mandamus relief reveals no denials by these defendants." (Doc. 15, pp. 7, 8). Although Gakuba points to his pending appeal, that document also states, without citation or evidence, that the legal materials will be destroyed

---

[4] To the extent Gakuba includes Swells, Brookhart, Lindsay, and Fanning in this claim, they have already been dismissed from the case.

(Doc. 15-1). It is not clear whether any of the exhibits in Gakuba's 561-page motion and exhibits for injunctive relief indicate when the documents will be destroyed. Thus, to the extent he seeks a temporary restraining order, that request is **DENIED**. The Court will allow his motion for preliminary injunction to proceed.

As the current status of Gakuba's legal boxes is not clear at this time, the Court **ORDERS** Defendants to respond to Gakuba's motion (Doc. 15) within **14 days**. Defendants should indicate the current status of his documents, the future plans for his documents, and the options offered to Gakuba to obtain his legal materials. They should also respond to Gakuba's statement that his attorney offered to have the shipping costs billed to his firm's account (Doc. 14, pp. 73-75) and whether that is a viable alternative.

## SANCTIONS WARNING

A final note on Gakuba's Amended Complaint. The first portion of his Amended Complaint reads like a motion to reconsider rather than an amended pleading. He attacks the undersigned's rulings and takes pot shots at the Court's recent rulings in other cases. He also includes "Notes" throughout his Amended Complaint where he attacks the undersigned's dismissal of his original Complaint.

For example, Gakuba argues that this Court, in dismissing his Complaint and first request for injunctive relief, employed an objectively unreasonable legal standard "unfounded in any case law precedence" (*Id.* at p. 3). He took issue with the Court's citation to *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012), for the standard for a preliminary injunction. Gakuba snidely noted that his case citation for the injunctive standard was not an abortion case and indicated that he "is neither

gender dysphoric nor planning on seeking an abortion." (*Id*. at p. 4).[5] He also accused the Court of applying the wrong standard, and argued that the standard quoted by the Court was based on the "subjective beliefs manifested in irrational animus towards *pro se* indigent Gakuba" (*Id*. at p. 4).

Gakuba also took issue with the Court's ruling, believing it to be evidence of a bias towards him. He argued that the Court displayed "rank duplicity" by finding that his claims regarding the destruction of his property in 2019 was untimely when the Court previously found Gakuba failed to exhaust the same claims in *Gakuba v. Wright*, Case No. 19-cv-1274. (*Id*. at p. 12). He noted that the Court should have applied equitable tolling, describing the Court's findings as a "duplicitously dismissive statute of limitations rubric" (*Id*. at p. 13). He describes this Court's conduct as "cynicism. Rank duplicity. Bias and prejudice." (*Id*.). "Judge Rosenstengel's deliberate indifference to these outrageous constitutional violations…appears to manifest itself in this case through subjectively unreasonable rejections per fanciful assessments of facts and applications of the law." (*Id*. at p. 16). He describes this court as a "malfunctional… judiciary…concern[ed]…more with gender dysphoria (aberrant debatable birth defects) that are deemed essential to treat in prison—but not prisoners with handicaps or disabilities." (*Id*.). In another part of his Amended Complaint, he describes this Court's assessment of the facts of his original Complaint as "objectively unreasonable" (*Id*. at p. 24). He argues that this Court has shown "manifest bias and prejudice" by dismissing his original

---

[5] This appears to be a reference to the Court's recent orders in *Monroe v. Rauner, et al.*, Case No. 18-cv-156-NJR, a case dealing with the treatment of gender dysphoria for transgender inmates in IDOC custody. Gakuba cites to the Court's ruling in that case on a number of occasions throughout the Amended Complaint. He compares his case to that case, implying that the undersigned displayed "shocking cynicism against IDOC" in that case [Monroe] while giving IDOC a pass in his cases (Doc. 14, p. 12).

Complaint and complains that it committed an equal protection violation by dismissing his case but ruling in plaintiff's favor in the Court's gender dysphoria case. He alleges that the Court ruled "in favor of political patrons" (*Id*. at p. 25). He also alleges that the undersigned is not fair or impartial (*Id*. at p. 9). He alleges that the Court's previous Order was "fanciful facts stitched to contrivances of the law" (*Id*. at p. 26). He accuses this Court of acting as an advocate for Defendants (*Id*. at p. 34).

Gakuba was recently warned by another judge in this District that his behavior would not be tolerated and could be sanctionable. *See Gakuba v. Swells*, Case No. 20-cv-277-SMY (Doc. 89) (Apr. 20, 2022). *See In re Mann*, 229 F.3d 657, 659 (7th Cir. 2000) ("Litigants are understandably disappointed when they do not prevail in court, but that does not give them the license to attack the integrity of the judiciary. Such abusive conduct will not be tolerated, not even from a *pro se* litigant."). He was subsequently warned again that "[a]busive language directed to the Court is an attack on the integrity of the judiciary." *Id*. (Doc. 96, p. 5). Gakuba's Amended Complaint in this case was filed prior to District Judge Yandle's ruling in his other pending case, but the undersigned reminds Gakuba that such inflammatory, insulting, and inappropriate commentary will not be tolerated. He is reminded that continued lack of respect and civility in his filings could result in sanctions, including monetary sanctions and a filing ban.

### DISPOSITION

For the reasons stated above, all Counts against John Doe #1 and Brookhart are severed into a new case. In the new case, the Clerk is **DIRECTED** to file the following documents:

15

- This Memorandum and Order;
- The Amended Complaint (Doc. 14); and
- Gakuba's motion to proceed *in forma pauperis* (Doc. 2).

The only claims remaining in this case are Counts 1-7, 9-11. All claims against Robert Fanning, Camile Lindsay, and Matthew Swells are **DISMISSED without prejudice**. Counts 1, 4, and 10 against Catherine Wright, John Barwick, and Matthew Swells will proceed. Gakuba's motion to proceed IFP (Doc. 2) is **GRANTED**.

The Clerk of Court shall prepare for Defendants Catherine Wright, John Barwick, and Matthew Swells: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to the defendants' place of employment as identified by Gakuba. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Gakuba, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**. Defendants are also **DIRECTED** to respond to Gakuba's motion for injunctive relief (Doc. 15) by **June 8, 2022**.

If judgment is rendered against Gakuba, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Gakuba is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 25, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**